## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **LARRY GREEN,** *et al.,* **Individually and on behalf of all others similarly situated,** | § § § § | **Civil Action No. 4:18-cv-01841** |
| | § | |
| *Plaintiffs,* | § § | **JURY TRIAL DEMANDED** |
| | § | |
| **v.** | § § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| **WASTE MANAGEMENT, INC.** | § § | |
| | § | **CLASS ACTION PURSUANT TO** |
| *Defendant.* | § § | **FED. R. CIV. P. 23** |
| | § | |

---

### FIRST AMENDED ORIGINAL/CLASS COLLECTIVE ACTION COMPLAINT

---

Plaintiffs Larry Green, Andrew Gutierrez, Richard Reyes, Erwin Ruemmele, Reed Rogne, Charles Nevius, and James Ivey, on behalf of themselves and all current and former Waste Disposal Drivers (hereinafter "Plaintiffs and the Putative Class Members"), who worked for Waste Management, Inc., anywhere in the United States and at any time during the relevant statutes of limitation, to recover compensation, liquidated damages, attorneys' fees, and costs under Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended; the Arizona Wage Act, A.R.S. §§ 25-310, *et seq.*; the California Labor Code, Cal. Lab. Code §§ 226, 226.7, 510, 5121194–1194 and Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("California Laws"); Florida common law, Minnesota common law, New Jersey common law, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*.; and Texas common law.

Plaintiffs' FLSA claims are asserted as a collective action under 29 U.S.C. § 216(b), while their respective state law claims are asserted as class actions under Federal Rule of Civil Procedure 23(b)(3).

# I.
## OVERVIEW

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 and class actions pursuant to the laws of Arizona, California, Florida Minnesota, New Jersey, Pennsylvania, and Texas.

2.      Plaintiffs and the Putative Class Members are those persons who are current and former non-exempt employees of Waste Management who have worked as Waste Disposal Drivers and were responsible for hauling waste and garbage to the appropriate facilities—such as landfill and transfer facilities—throughout the United States at any time during the relevant statutes of limitation.

3.      Plaintiffs and the Putative Class Members routinely worked (and continue to work) in excess of forty (40) hours per workweek.

4.      During the relevant time period, Waste Management has knowingly and deliberately failed to compensate Plaintiffs and the Putative Class Members for all hours worked in excess of forty each week on a routine and regular basis.

5.      Specifically, Waste Management's regular practice—including during weeks when Plaintiffs and the Putative Class Members worked in excess of 40 hours (not counting hours worked off-the-clock)—was (and is) to automatically deduct a 30-minute meal-period from Plaintiffs and the Putative Class Members' daily time even though they regularly worked (and continue to work) "off-the-clock" through their respective meal-period breaks.

6.      The effect of Waste Management's practice was (and is) that all time worked by Plaintiffs and the Putative Class Members was not (and is not) counted and paid; thus, Waste Management has failed to properly calculate and compensate Plaintiffs and the Putative Class Members for all of their hours worked and overtime under the FLSA and the relevant state laws.

7.     Plaintiffs and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or the various applicable state laws.

8.     Plaintiffs and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all damages owed under their respective Arizona, California, Florida, Minnesota, New Jersey, Pennsylvania, Tennessee, and Texas class actions pursuant to Federal Rule of Civil Procedure 23.

9.     Plaintiffs also pray that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10.    Plaintiffs also pray that the Rule 23 classes are certified as defined herein, and that Plaintiff Gutierrez designated herein be named as the Class Representative for the Arizona Class; Plaintiff Reyes designated herein be named as Class Representative for the California Class, Plaintiff Ruemmele designated herein be named as the Class Representative for the Florida Class; Plaintiff Rogne designated herein be named as Class Representative for the Minnesota Class, Plaintiff Nevius designated herein be named as Class Representative for the New Jersey Class, Plaintiff Ivey designated herein be named as Class Representative for the Pennsylvania Class; and Plaintiff Larry Green designated herein be named as the Class Representative for the Texas Class.

## II.
## PARTIES

11.    Plaintiff Larry Green ("Green") was employed by Waste Management in Texas during the relevant time period. Plaintiff Green did not receive compensation for all hours worked or the

correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12.     Plaintiff Andrew Gutierrez ("Gutierrez") was employed by Waste Management in Arizona during the relevant time period. Plaintiff Gutierrez did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

13.     Plaintiff Richard Reyes ("Reyes") was employed by Waste Management in California during the relevant time period. Plaintiff Reyes did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[3]

14.     Plaintiff Erwin Ruemmele ("Ruemmele") was employed by Waste Management in Florida during the relevant time period. Plaintiff Ruemmele did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[4]

15.     Plaintiff Reed Rogne ("Rogne") was employed by Waste Management in Minnesota during the relevant time period. Plaintiff Rogne did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[5]

---

[1] The written consent of Larry Green is on file with the Court.

[2] The written consent of Andrew Gutierrez is on file with the Court.

[3] The written consent of Richard Reyes is on file with the Court.

[4] The written consent of Erwin Ruemmele is on file with the Court.

[5] The written consent of Reed Rogne is on file with the Court.

16.     Plaintiff Charles Nevius ("Nevius") was employed by Waste Management in New Jersey during the relevant time period. Plaintiff Nevius did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[6]

17.     Plaintiff James Ivey ("Ivey") was employed by Waste Management in Pennsylvania during the relevant time period. Plaintiff Ivey did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[7]

18.     The FLSA Collective Members are those current and former waste disposal drivers who were employed by Waste Management at any time from June 5, 2015 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiffs worked and were paid.

19.     The Arizona Class Members are those current and former waste disposal drivers where were employed by Waste Management in Arizona at any time from June 5, 2017 through the final disposition of this matter and have been subjected to the same illegal pay system under which Plaintiff Gutierrez worked and was paid.

20.     The California Class Members are those current and former waste disposal drivers who were employed by Waste Management in California at any time from June 5, 2014 through the final disposition of this matter and have been subjected to the same illegal pay system under which Plaintiff Reyes worked and was paid.

21.     The Florida Class Members are those current and former waste disposal drivers who were employed by Waste Management in Florida at any time from June 5, 2012 through the final

---

[6] The written consent of Charles Nevius is on file with the Court.

[7] The written consent of James Ivey is on file with the Court.

disposition of this matter and have been subjected to the same illegal pay system under which Plaintiff Ruemmele worked and was paid.

22. The Minnesota Class Members are those current and former waste disposal drivers who were employed by Waste Management in Minnesota at any time from June 5, 2012 through the final disposition of this matter and have been subjected to the same illegal pay system under which Plaintiff Rogne worked and was paid.

23. The New Jersey Class Members are those current and former waste disposal drivers who were employed by Waste Management in New Jersey at any time from June 5, 2012 through the final disposition of this matter and have been subjected to the same illegal pay system under which Plaintiff Nevius worked and was paid.

24. The Pennsylvania Class Members are those current and former waste disposal drivers who were employed by Waste Management in Pennsylvania at any time from June 5, 2015 through the final disposition of this matter and have been subjected to the same illegal pay system under which Plaintiff Ivey worked and was paid.

25. The Texas Class Members are those current and former waste disposal drivers who were employed by Waste Management in Texas at any time from June 5, 2014 through the final disposition of this matter and have been subjected to the same illegal pay system under which Plaintiff Green worked and was paid.

26. Defendant Waste Management, Inc. ("Waste Management") is a foreign for-profit company, licensed to and doing business in Texas, with its corporate headquarters located in Houston, Harris County, Texas. Waste Management has been served and previously appeared herein.

### III.
### JURISDICTION & VENUE

27. This Court has subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under the FLSA, 29 U.S.C. §§ 201–19.

28.     This Court has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367.

29.     This Court has personal jurisdiction over Waste Management because the cause of action arose within this district as a result of Waste Management's conduct within this district.

30.     Venue is proper in the Southern District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

31.     Specifically, Waste Management maintains its corporate headquarters in Houston, Texas, which is within this District and Division.

32.     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## VI.
## FACTS

### A.    Employee/Employer Relationship

33.     Waste Management touts itself as "North America's leading provider of integrated environmental solutions[ ]" providing  waste collection services to its customers throughout the United States.[8]

34.     Serving more than 21 million customers in the United States and Canada, Waste Management states that it currently operates in more than forty states.[9]

35.     To provide these services, Waste Management employed (and continues to employ) numerous Waste Disposal Drivers—including Plaintiffs and the individuals that make up the FLSA Collective and the respective state law class actions.

36.     Waste Management holds itself out as an employer of its Waste Disposal Drivers and states that "[a]t Waste Management, we are committed to promoting and fostering equal opportunity

---

[8] https://www.wm.com/us.

[9] *Id.*

for all employees in all areas of our company. Our goal is to make a workplace where everyone is valued and respected."[10]

37.     Waste Management operates across the United States through the use of various wholly owned subsidiary entities.

38.     These subsidiary entities are subject to Waste Management's direct operational control, operate as Waste Management, include Waste Management's corporate and singular logo on their uniforms and vehicles, and hold themselves out as Waste Management to their employees, their customers and the general public.

39.     On information and belief, Waste Management maintains the ultimate power to hire and fire its employees—including Plaintiffs and the Putative Class Members—who have worked (and are currently working) under its subsidiary entities as Waste Management oversees the finances of its subsidiary entities throughout the United States.

40.     In fact, Waste Management is directly involved in the hiring process because applicants for the Waste Disposal Driver position with Waste Management (ostensibly through its subsidiary entities) are directed to apply for positions across the United States through Waste Management's website—a website that purports to offer direct employment for Waste Management.[11]

41.     Additionally, the rules and regulations governing Plaintiffs and the Putative Class Members are set directly by Waste Management, and Waste Management's policies and procedures

---

[10] https://careers.wm.com/us/en/whoweare (emphasis added).

[11] https://careers.wm.com/frontlineoperations/us/en/c/drivers-jobs (indicating there are more than 600 positions available for Waste Management drivers across the United States in Minnesota, Pennsylvania, Colorado, Texas, Wisconsin, Florida, California, New Jersey, Michigan, Iowa, Ohio, Alabama, Tennessee, West Virginia, Arkansas, Georgia, Kansas, Louisiana, Mississippi, South Carolina, Kentucky, Massachusetts, New York, North Carolina, Illinois, New Hampshire, Indiana, Washington, Arizona, Missouri, Nebraska, Delaware, Maryland, Oregon, Virginia, Oklahoma, Nevada, Maine, North Dakota, Alaska, New Mexico, Rhode Island, South Dakota, and Utah).

apply to all employees working for it, directly or through one of its subsidiary entities throughout the United States.

42.     On information and belief, these policies and procedures are dictated from the top (Waste Management) down through its subsidiary entities throughout the United States and controls the basic tenants of employment with Waste Management (and its subsidiary entities) nationwide.

43.     Importantly, on information and belief, compliance with the FLSA, and other federal laws, is governed and overseen by Waste Management and all of Waste Management's subsidiaries are required to follow the processes and procedures as set by Waste Management.[12]

44.     Further, and on information and belief, the auto deduction policy that has illegally forced Plaintiffs and the Putative Class Members to perform work off the clock, for which they are not paid, is a policy set by Waste Management that applies to all of its subsidiaries, and all Waste Management employees throughout the United States.

45.     Waste Management is also directly involved in determining the benefits and compensation available for its workforce across the United States, and as it applies for Plaintiffs and the Putative Class Members.[13]

46.     The Waste Management website indicates that compensation and benefits are determined, to some extent, at the corporate level—specifically, "[a]t Waste Management, we know that benefits and compensation are each important pieces of every employment decision. This is why we are constantly working to give our employees an industry-leading perks package that encompasses a broad number of services, including many that are completely cost-free to the employee. On our

---

[12] *C.f.,* https://careers.wm.com/us/en/whoweare (focusing on diversity and inclusiveness at Waste Management). and stating that "Diversity is about more than gender, race, or ethnicity. It's about who we are as individuals and the unique differences we bring to Waste Management every day.")

[13] https://careers.wm.com/us/en/perks.

team, each eligible member receives a comprehensive benefits package that includes health, family, retirement and professional development."[14]

47.     On information and belief, Waste Management maintains and/or shares access with the employment records of Plaintiffs and the Putative Class Members in a centralized database and record keeping system.

**B.     Waste Management's Waste Disposal Drivers**

48.     While exact job titles may differ, Waste Management's waste disposal drivers were (and continue to be) subjected to the same or similar illegal pay practices for similar work.

49.     Plaintiffs and the Putative Class Members' primary job duties consisted of driving waste disposal trucks, hauling waste, recycling, and other refuse to various landfill or disposal sites throughout the United States.

50.     Waste Management has a corporate policy and practice of automatically deducting 30 minutes a day for a meal-period break from the "on-the-clock" hours of its waste disposal drivers.

51.     Waste Management made this deduction despite its actual knowledge that Plaintiffs and the Putative Class Members did not take a meal-period break, and instead continued driving their respective routes for Waste Management's benefit during the alleged meal breaks.

52.     Plaintiffs and the Putative Class Members were not allowed to report that they actually worked through lunch in order to receive the compensation to which they were entitled, which would have been overtime compensation when Plaintiffs and the Putative Class Members worked more than forty hours in that week—which they did the majority of their workweeks.

---

[14] *See id.*

53.     As a result of Waste Management's policy and practice of automatically deducting a 30-minute meal-period break, Plaintiffs and the Putative Class Members were not compensated for all hours worked in excess of forty in a workweek at the rates required by the FLSA.

54.     Indeed, Plaintiffs and the Putative Class Members worked an additional 2.5 or more overtime hours each week for which they did not receive any compensation, including their overtime compensation.

55.     Waste Management has employed, and currently employs, other individuals throughout the United States who performed (and continue to perform) the same or similar job duties under the same pay provisions as Plaintiffs.

56.     Waste Management was aware of its obligation to pay overtime to Plaintiffs and the Putative Class Members and failed to do so for all hours worked over forty (40) each workweek.

57.     Waste Management knew Plaintiffs and the Putative Class Members were not paid for their daily meal-period breaks—breaks that Waste Management knew Plaintiffs and the Putative Class Members worked through—and Waste Management did not correct this illegal practice or offer any back pay.

58.     Instead, Waste Management knowingly, willfully, and with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation for all hours worked over forty each week with respect to Plaintiffs and the Putative Class Members .

59.     Accordingly, Waste Management's pay policies and practices violated (and continue to violate) the FLSA and the applicable state laws.

**V.**
**CAUSE OF ACTION**

**COUNT ONE**
**(Collective Action Alleging FLSA Violations)**

**A.     FLSA COVERAGE**

60.     All previous paragraphs are incorporated as though fully set forth herein.

61.     The FLSA Collective is defined as:

**ALL WASTE DISPOSAL DRIVERS WHO WORKED FOR WASTE MANAGEMENT, INC. ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM JUNE 5, 2015 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND DID NOT RECEIVE OVERTIME FOR ALL HOURS WORKED OVER FORTY EACH WEEK ("FLSA Collective" or "FLSA Collective Members").**

62.     At all times hereinafter mentioned, both enterprise and individual coverage under the FLSA, 29 U.S.C. § 207(a), exists over the claims of Plaintiffs and the FLSA Collective Members against Waste Management.

63.     Waste Management qualifies as an "enterprise engaged in commerce or in the production of goods for commerce" under 29 U.S.C. § 203(s)(1) because Waste Management ahs employees handling, selling, or otherwise working on materials that have been moved in or produced for commerce. For example, as non-exempt waste disposal drivers for Waste Management, Plaintiffs and the FLSA Collective Members worked (and continue to work) with vehicles and their component parts, fuel them with gasoline, and use radios, paper, office supplies and other materials that have been moved in commerce. Moreover, Waste Management has had revenues exceeding $500,000 per year at all relevant times.

64.     Specifically, Waste Management operates on interstate highways, purchase materials through commerce, transport materials through commerce and on the interstate highways, and conduct transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

65.     Plaintiffs and the FLSA Collective Members qualify as employees engaged in commerce under the FLSA, 29 U.S.C. § 207(a). Plaintiff and the FLSA Collective Members engage in regular contact with commerce, and their work as waste disposal drivers is directly and vitally related

to the functioning of instrumentalities and facilities of commerce—including without limitation commercial and industrial businesses—such that their work constitutes a part of commerce. Thus, during the respective periods of Plaintiff and the Putative Class Members' employment by Waste Management, these individuals provided services for Waste Management that involved interstate commerce.

66. In sum, by performing the operations hereinabove described, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

67. The proposed class of similarly situated employees, i.e. putative class members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 61.

68. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Waste Management.

**B.     FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT**

69. All previous paragraphs are incorporated as though fully set forth herein.

70. Waste Management violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such non-exempt employees for all the hours they worked in excess of 40 hours per week at rates at least one and one-half times the regular rates for which they were employed.

71.     Moreover, Waste Management knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

72.     Waste Management knew or should have known its pay practices were in violation of the FLSA.

73.     Waste Management is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

74.     Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Waste Management to pay them according to the law.

75.     The decision and practice by Waste Management to not pay Plaintiffs and the FLSA Collective Members overtime for all hours worked over forty (40) each week was neither reasonable nor in good faith.

76.     Accordingly, Plaintiffs and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of 40 hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rates of pay, plus liquidated damages, attorneys' fees and costs.

## C.      COLLECTIVE ACTION ALLEGATIONS

77.     All previous paragraphs are incorporated as though fully set forth herein.

78.     Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all of Waste Management's respective current and/or former employees who are (or were) similarly situated to Plaintiffs with regard to the work they have performed and the manner in which they have been deprived the proper amount of overtime compensation.

79.     Other similarly situated employees of Waste Management have been victimized by Waste Management's patterns, practices, and policies—which are in willful violation of the FLSA.

80. The FLSA Collective Members are defined in Paragraph 61.

81. Waste Management's failure to pay its Waste Disposal Drivers—Plaintiffs and FLSA Collective Members—for all hours worked overtime at the proper rate results from generally applicable policies and practices of Waste Management, and does not depend on the personal circumstances of the Plaintiffs and FLSA Collective Members

82. Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

83. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

84. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated under the FLSA for all hours worked in excess of forty (40) hours per workweek.

85. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

86. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Waste Management will retain the proceeds of its violations.

87. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

88. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 61 and notice should be promptly sent.

## COUNT TWO
### (Class Action Alleging Violations of the Arizona Act)

**A. ARIZONA ACT COVERAGE**

89. All previous paragraphs are incorporated as though fully set forth herein.

90.     The Arizona Act Class is defined as:

**ALL WASTE DISPOSAL DRIVERS WHO WORKED FOR WASTE MANAGEMENT, INC. IN ARIZONA, AT ANY TIME FROM JUNE 5, 2017 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND DID NOT RECEIVE COMPENSATION FOR ALL HOURS WORKED ("Arizona Class" or "Arizona Class Members").**

91.     At all times hereinafter mentioned, Waste Management has been an employer within the meaning of the Arizona Act, A.R.S. § 23-350(3).

92.     At all times hereinafter mentioned, Plaintiff Gutierrez and the Arizona Class Members have been employees within the meaning of the Arizona Act, A.R.S. § 25-350(2).

**B.      FAILURE TO PAY WAGES IN ACCORDANCE WITH THE ARIZONA ACT**

93.     All previous paragraphs are incorporated as though fully set forth herein.

94.     Waste Management owes Plaintiff Gutierrez and the Arizona Class Members wages, as defined in section 25-350(7) of the Act, to compensate them for labor and services they provided to WMI in the furtherance of their job duties. *See* A.R.S. § 25-350(7), 351(C).

95.     Plaintiff Gutierrez and other Arizona Class Members have not been exempt from receiving overtime benefits under the Arizona Act.

96.     Plaintiff Gutierrez and the Arizona Class Members worked more than forty (40) hours in workweeks during times relevant to this complaint, however, Waste Management violated the Arizona Act by failing to pay Plaintiffs and the Arizona Class Members for all of the hours they worked on its behalf, and for failing to pay the correct amount of overtime for all hours worked over forty (40) per week. *See* A.R.S. § 25-350(7), 351(C).

97.     Plaintiff Gutierrez and the Arizona Class Members have suffered damages and continue to suffer damages as a result of Waste Management's acts or omissions as described herein; though Waste Management is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

98.     The Arizona Act provides that Plaintiff Gutierrez and the Arizona Class Members are entitled to recover treble the amount of the unpaid wages. *See* A.R.S. § 25-355(A).

99.     In violating the Arizona Act, Waste Management acted willfully, without a good faith basis and with reckless disregard of clearly applicable Arizona law.

100.    The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Arizona Act, is defined in Paragraph 90.

101.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Waste Management.

## C.     ARIZONA ACT CLASS ALLEGATIONS

102.    Plaintiff Gutierrez brings his Arizona Act claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Waste Management to work in Arizona since June 5, 2017.

103.    Class action treatment of Plaintiff Gutierrez's Arizona Act claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

104.    The number of Arizona Class Members is so numerous that joinder of all class members is impracticable.

105.    Plaintiff Gutierrez is a member of the Arizona Class, his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

106.    Plaintiff Gutierrez and his counsel will fairly and adequately represent the class members and their interests.

107.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class

members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

108.    Accordingly, the Arizona Class should be certified as defined in Paragraph 90.

**COUNT THREE**
**(Class Action Alleging Violations of California Law)**

**D.    CALIFORNIA CODE COVERAGE**

109.    All previous paragraphs are incorporated as though fully set forth herein.

110.    The California Class is defined as:

**ALL WASTE DISPOSAL DRIVERS WHO WORKED FOR WASTE MANAGEMENT, INC. IN CALIFORNIA, AT ANY TIME FROM JUNE 5, 2014 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND DID NOT RECEIVE COMPENSATION FOR ALL HOURS WORKED ("California Class" or "California Class Members").**

111.    At all times hereinafter mentioned, Waste Management has been an employer within the meaning of the California Labor Code, CAL. LAB. CODE § 3351.

112.    At all times hereinafter mentioned, Plaintiff Reyes and the California Class Members have been employees within the meaning of the California Labor Code, CAL. LAB. CODE § 3300.

**B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH CALIFORNIA LAW**

113.    All previous paragraphs are incorporated as though fully set forth herein.

114.    In accordance with the mandates of California Labor Code sections 226.7 and 512 Plaintiff Reyes and the California Class Members had the right to take two uninterrupted thirty-minute meal periods for each day they worked ten (10) hours per day and a ten (10) minute rest period for every four (4) hours worked per day. CAL. LAB. CODE § 226.7 and 512 (2017).

115.    Though the California Labor Code requires that all employees, including Plaintiff Reyes and the California Class Members, receive two thirty (30) minute meal-period breaks when employed for ten (10) hours per day, Plaintiff Reyes and the California Class Members did not receive

two meal-period breaks for each day worked, despite working twelve-hour shifts. CAL. LAB. CODE § 512 (2017).

116.    The California Labor Code also requires that all employees, including Plaintiff Reyes and the California Class Members, receive time and one-half overtime premium compensation for hours worked over eight (8) in one day. CAL. LAB. CODE § 510.

117.    Despite working over eight hours a day as part of their normal and regular routes, Plaintiff Reyes and the California Class Members did not receive the correct amount of overtime compensation for all hours worked over eight (8) in one day.

118.    The California Labor Code also requires that all employees, including Plaintiff Reyes and the California Class Members, receive two times the overtime premium compensation for hours worked over twelve (12) in one day. CAL. LAB. CODE § 510 (2017).

119.    Though Plaintiff and the California Class Members occasionally worked over twelve (12) hours in one day, they did not receive the correct "double time" compensation required by California law.

120.    Plaintiff Reyes and California Class Members have not been exempt from receiving overtime benefits under the California Act.

121.    Plaintiff Reyes and the California Class Members have suffered damages and continue to suffer damages as a result of Waste Management's acts or omissions as described herein; though Waste Management is in possession and control of necessary documents and information from which Plaintiff Reyes would be able to precisely calculate damages.

122.    The California Labor Code provides that Plaintiff Reyes and the California Class Members are entitled to recover the unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit according to the mandate of California Labor Code § 1194.

123. In violating the California Labor Code, Waste Management acted willfully, without a good faith basis and with reckless disregard of clearly applicable California law.

124. Waste Management has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) federally mandated overtime wages; (2) minimum overtime wages required by the State of California; and (3) meal-period and rest-period break wages— in further violation of the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

125. The proposed class of employees, i.e. putative class members sought to be certified pursuant to the California Laws, is defined in Paragraph 110.

126. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Waste Management.

## C. CALIFORNIA CLASS ALLEGATIONS

127. Plaintiff Reyes brings his California claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Waste Management to work in California since June 5, 2014.

128. Class action treatment of Plaintiff Reyes' California claims is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

129. The number of California Class Members is so numerous that joinder of all class members is impracticable.

130. Plaintiff Reyes is a member of the California Class, his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

131.    Plaintiff Reyes and his counsel will fairly and adequately represent the class members and their interests.

132.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

133.    Accordingly, the California Class should be certified as defined in Paragraph 110.

**COUNT FOUR**
**(Class Action Alleging Violations of Florida Common Law)**

**A.    VIOLATIONS OF FLORIDA COMMON LAW**

134.    All previous paragraphs are incorporated as though fully set forth herein.

135.    Plaintiff Ruemmele further brings this action pursuant to Florida common law equitable theories of unjust enrichment and *quantum meruit. See Fernandez v. City of Fruitland Park*, No. 5:16-cv-326, 2016 WL 8329400, at *8 (M.D. Fla Dec. 6, 2016).

136.    The Florida Class is defined as:

**ALL WASTE DISPOSAL DRIVERS WHO WORKED FOR WASTE MANAGEMENT, INC. IN FLORIDA, AT ANY TIME FROM JUNE 5, 2014 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND DID NOT RECEIVE COMPENSATION FOR ALL HOURS WORKED ("Florida Class" or "Florida Class Members").**

137.    Plaintiff Ruemmele and the Florida Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of Waste Management. These claims are independent of their claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Carman v. Meritage Homes Corp.*, 37 F.Supp.3d 860, 867 (S.D. Tex. 2014).

138.     Plaintiff Ruemmele and the Florida Class Members conferred a valuable benefit on Waste Management because they provided services to Waste Management during their respective lunch breaks, and without compensation.

139.     Waste Management was aware that Plaintiff Ruemmele and the Florida Class Members worked through their respective lunch breaks without compensation and caused them to continue to work through their respective lunch breaks while off the clock and without pay.

140.     Waste Management has therefore benefited from services rendered by Plaintiff Ruemmele and the Florida Class Members and it is inequitable for Waste Management to retain the benefit of Plaintiff Ruemmele and the Florida Class Members' services without paying fair value for them.

**B.     FLORIDA CLASS ALLEGATIONS**

141.     Plaintiff Ruemmele and the Florida Class Members bring their Florida Claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Waste Management to work in Florida since June 5, 2014. *See* FLA. STAT. § 95.11(3)(k).

142.     Class action treatment of Plaintiff Ruemmele and the Florida Class Members is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

143.     The number of Florida Class Members is so numerous that joinder of all class members is impracticable.

144.     Plaintiff Ruemmele is a member of the Florida Class and his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of the other class members.

145.     Plaintiff Ruemmele and his counsel will fairly and adequately represent the class members and their interests.

146.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

147.     Accordingly, the Florida Class should be certified as defined in Paragraph 136.

## COUNT FIVE
### (Class Action Alleging Violations of Minnesota Common Law)

**A.     VIOLATIONS OF MINNESOTA COMMON LAW**

148.     All previous paragraphs are incorporated as though fully set forth herein.

149.     Plaintiff Rogne further brings this action pursuant to Minnesota common-law equitable theories of unjust enrichment and *quantum meruit. See Dahl v. Reynolds Tobacco Company*, 742 N.W.2d 186, 195–96 (Minn. Ct. App. 2007).

150.     The Minnesota Class is defined as:

**ALL WASTE DISPOSAL DRIVERS WHO WORKED FOR WASTE MANAGEMENT, INC. IN MINNESOTA, AT ANY TIME FROM JUNE 5, 2012 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND DID NOT RECEIVE COMPENSATION FOR ALL HOURS WORKED ("Minnesota Class" or "Minnesota Class Members").**

151.     Plaintiff Rogne and the Minnesota Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of Waste Management. These claims are independent of their claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Carman v. Meritage Homes Corp.*, 37 F.Supp.3d 860, 867 (S.D. Tex. 2014).

152.     Plaintiff Rogne and the Minnesota Class Members conferred a valuable benefit on Waste Management because they provided services to Waste Management during their respective lunch breaks, and without compensation.

153.     Waste Management was aware that Plaintiff Rogne and the Minnesota Class Members worked through their respective lunch breaks without compensation and caused them to continue to work through their respective lunch breaks while off the clock and without pay.

154.     Waste Management has therefore benefited from services rendered by Plaintiff Rogne and the Minnesota Class Members and it is inequitable for Waste Management to retain the benefit of Plaintiff Rogne and the Minnesota Class Members' services without paying fair value for them.

## B.     MINNESOTA CLASS ALLEGATIONS

155.     Plaintiff Rogne and the Minnesota Class Members bring their Minnesota Claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Waste Management to work in Minnesota since June 5, 2012. *See* MINN. STAT. § 541.05.

156.     Class action treatment of the Minnesota Class is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

157.     The number of Minnesota Class Members is so numerous that joinder of all class members is impracticable.

158.     Plaintiff Rogne is a member of the Minnesota Class and his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of the other class members.

159.     Plaintiff Rogne and his counsel will fairly and adequately represent the class members and their interests.

160.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

161.     Accordingly, the Minnesota Class should be certified as defined in Paragraph 150.

**COUNT SIX**
**(Class Action Alleging Violations of New Jersey Common Law)**

**A.    VIOLATIONS OF NEW JERSEY COMMON LAW**

162.    All previous paragraphs are incorporated as though fully set forth herein.

163.    Plaintiff Nevius further brings this action pursuant to the New Jersey common-law equitable theory of unjust enrichment. *See Stewart v. Beam Global Spirts & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012).

164.    The New Jersey Class is defined as:

**ALL WASTE DISPOSAL DRIVERS WHO WORKED FOR WASTE MANAGEMENT, INC. IN NEW JERSEY, AT ANY TIME FROM JUNE 5, 2012 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND DID NOT RECEIVE COMPENSATION FOR ALL HOURS WORKED ("New Jersey Class" or "New Jersey Class Members").**

165.    Plaintiff Nevius and the New Jersey Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of Waste Management. These claims are independent of their claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 867 (S.D. Tex. 2014).

166.    Plaintiff Nevius and the New Jersey Class Members conferred a valuable benefit on Waste Management because they provided services to Waste Management during their respective lunch breaks, and without compensation.

167.    Plaintiff Nevius and the New Jersey Class Members expected to be compensated for all hours they worked on behalf of Waste Management.

168.    Waste Management was aware Plaintiff Nevius and the New Jersey Class Members worked through their respective lunch breaks without compensation and caused them to continue to work through their respective lunch breaks while off the clock and without pay.

169.    Waste Management has therefore benefited from services rendered by Plaintiff Nevius and the New Jersey Class Members and it is inequitable for Waste Management to retain the benefit of Plaintiff Nevius and the New Jersey Class Members' services without paying fair value for them.

**B.    NEW JERSEY CLASS ALLEGATIONS**

170.    Plaintiff Nevius and the New Jersey Class Members bring their New Jersey Claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Waste Management to work in New Jersey since June 5, 2012. *See* N.J.S.A. § 2A:14-1.

171.    Class action treatment of the New Jersey Class is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

172.    The number of New Jersey Class Members is so numerous that joinder of all class members is impracticable.

173.    Plaintiff Nevius is a member of the New Jersey Class and his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of the other class members.

174.    Plaintiff Nevius and his counsel will fairly and adequately represent the class members and their interests.

175.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

176.    Accordingly, the New Jersey Class should be certified as defined in Paragraph 164.

**COUNT SEVEN**
**(Class Action Alleging Violations of the PMWA)**

**A.    PMWA COVERAGE**

177.    All previous paragraphs are incorporated as though fully set forth herein.

178.    The PMWA Class is defined as:

**ALL WASTE DISPOSAL DRIVERS WHO WORKED FOR WASTE MANAGEMENT, INC. IN PENNSYLVANIA, AT ANY TIME FROM JUNE 5, 2015 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND DID NOT RECEIVE OVERTIME COMPENSATION FOR ALL HOURS WORKED OVER FORTY IN A SINGLE WORKWEEK ("Pennsylvania Class" or "Pennsylvania Class Members").**

179.    At all times hereinafter mentioned, Waste Management has been an employer within the meaning of the PMWA, 43 P.S. §§ 333.103(g).

180.    At all times hereinafter mentioned, Plaintiff Ivey and the Pennsylvania Class Members were covered employees entitled to the above-described PMWA's protections. *See* 43 P.S. § 333.103(h).

## B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE PENNSYLVANIA ACT

181.    All previous paragraphs are incorporated as though fully set forth herein.

182.    The PMWA requires that covered employees be compensated for all hours worked. *See* 43. P.S. § 33.104(c); 34 PA. CODE § 231.41.

183.    The PMWA also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate of not less than one and one-half times the hourly rate at which he is employed. *See* 43. P.S. § 33.104(c); 34 PA. CODE § 231.41.

184.    Waste Management has failed to accurate track all of the hours that Plaintiff Ivey and the Pennsylvania Class Members worked. *See* 43 P.S. § 33.108 and 34 PA. CODE § 231.31.

185.    Plaintiff Ivey and the Pennsylvania Class Members worked more than forty (40) hours in workweeks during times relevant to this complaint, however, Waste Management violated the PMWA by failing to pay Plaintiff Ivey and the Pennsylvania Class Members for all hours worked, and

for failing to pay the correct overtime premium for hours worked over forty (40) per week, in violation of 43 P.S. § 333.104(c), .108.

186.    Plaintiff Ivey and the Pennsylvania Class Members have suffered damages and continue to suffer damages as a result of Waste Management's acts or omissions as described herein; though Waste Management is in possession and control of necessary documents and information from which Plaintiff Ivey and the Pennsylvania Class Members would be able to precisely calculate damages.

187.    In violating the PMWA, Waste Management acted willfully, without a good faith basis and with reckless disregard of clearly applicable Pennsylvania law.

188.    The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Pennsylvania Act, is defined in Paragraph 178.

189.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Waste Management.

## B.    PENNSYLVANIA ACT CLASS ALLEGATIONS

190.    Plaintiff Ivey brings his PMWA claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Waste Management to work in Pennsylvania since July 20, 2015.

191.    Class action treatment of Plaintiff Ivey's PMWA claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

192.    The number of Pennsylvania Class Members is so numerous that joinder of all class members is impracticable.

193.    Plaintiff Ivey is a member of the Pennsylvania Class, his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

194.     Plaintiff Ivey and his counsel will fairly and adequately represent the class members and their interests.

195.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

196.     Accordingly, the Pennsylvania Class should be certified as defined in Paragraph 178.

**COUNT EIGHT**
**(Class Action Alleging Violations of Texas Common Law)**

**A.     VIOLATIONS OF TEXAS COMMON LAW**

197.     All previous paragraphs are incorporated as though fully set forth herein.

198.     Plaintiff Green further brings this action pursuant to the equitable theory of *quantum meruit. See Artemis Seafood, Inc. v. Butcher's Choice, Inc.* No. CIV. A. 3:98-0282, 1999 WL 608853, at *3 (N.D. Tex. Aug. 11, 1999) (citing *Schuchart & Assocs. V. Solo Serve Corp.*, 1983 WL 1147, at *23 (W.D. Tex. June 29, 1983)).

199.     The Texas Class is defined as:

> **ALL WASTE DISPOSAL DRIVERS WHO WORKED FOR WASTE MANAGEMENT, INC. IN TEXAS, AT ANY TIME FROM JUNE 5, 2014 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND DID NOT RECEIVE COMPENSATION FOR ALL HOURS WORKED ("Texas Class" or "Texas Class Members").**

200.     Plaintiff Green and the Texas Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of Waste Management. These claims are independent of Plaintiff Green's claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 867 (S.D. Tex. 2014).

201.     Plaintiff Green and the Texas Class Members provided valuable services for Waste Management, at Waste Management's direction and with Waste Management's acquiescence.

202.     Waste Management accepted Plaintiff Green and the Texas Class Members' services and benefited from Plaintiff Green's timely dedication to Waste Management's customers.

203.     Waste Management was aware that Plaintiff Green and the Texas Class Members expected to be compensated for the services they provided to Waste Management.

204.     Waste Management has therefore benefited from services rendered by the Plaintiff Green and the Texas Class Members and they are entitled to recover pursuant to the equitable theory of *quantum meruit*.

## B.     TEXAS COMMON LAW CLASS ALLEGATIONS

205.     The Texas Common Law Plaintiffs bring their Texas Common Law Claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by WM to work in Texas since June 5, 2014. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051.

206.     Class action treatment of the Texas Common Law Class Members is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

207.     The number of Texas Common Law Class Members is so numerous that joinder of all class members is impracticable.

208.     Plaintiff Green is a member of the Texas Common Law Class, his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of the other class members.

209.     Plaintiff Green and his counsel will fairly and adequately represent the class members and their interests.

210.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

211.     Accordingly, the Texas Common Law Class should be certified as defined in Paragraph 199.

## VI.
## RELIEF SOUGHT

212.     Plaintiffs respectfully pray for judgment against Waste Management as follows:

a.     For an Order certifying the FLSA Collective as defined in Paragraph 64 and requiring Waste Management to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all FLSA Collective Members;

b.     For and Order certifying the Arizona Class as defined in Paragraph 90 and designating Plaintiff Gutierrez as the Class Representative of the Arizona Class.

c.     For and Order certifying the California Class as defined in Paragraph 110 and designating Plaintiff Reyes as the Class Representative of the California Class.

d.     For and Order certifying the Florida Class as defined in Paragraph 136 and designating Plaintiff Ruemmele as the Class Representative of the Florida Class.

e.     For and Order certifying the Minnesota Class as defined in Paragraph 150 and designating Plaintiff Rogne as the Class Representative of the Minnesota Class.

f.     For and Order certifying the New Jersey Class as defined in Paragraph 164 and designating Plaintiff Nevius as the Class Representative of the New Jersey Class.

g.     For and Order certifying the Pennsylvania Class as defined in Paragraph 178 and designating Plaintiff Ivey as the Class Representative of the Pennsylvania Class.

h.	For and Order certifying the Texas Class as defined in Paragraph 199 and designating Plaintiff Green as the Class Representative of the Texas Class.

i.	For an Order approving the form and content of a notice to be sent to all Putative Class Members advising them of the pendency of this litigation and of their rights with respect thereto;

j.	For an Order pursuant to Section 16(b) of the FLSA finding Waste Management liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit);

k.	For an Order pursuant to the Arizona Acts awarding the Arizona Class Members all damages allowed by law.

l.	For an Order pursuant to the California Laws awarding the California Class Members all damages allowed by law.

m.	For an Order pursuant to Florida Common Law awarding the Florida Class Members all damages allowed by law.

n.	For an Order pursuant to Minnesota Common Law awarding the Minnesota Class Members all damages allowed by law.

o.	For an Order pursuant to New Jersey common law awarding the New Jersey Class Members all damages allowed by law.

p.	For an Order pursuant to the PMWA awarding the Pennsylvania Class Members all damages allowed by law.

q.	For an Order pursuant to Texas common law awarding the Texas Class Members all damages allowed by law.

r.     For an Order awarding Plaintiffs and the Putative Class Members the costs of this action;

s.     For an Order awarding Plaintiffs and the Putative Class Members attorneys' fees;

t.     For an Order awarding Plaintiffs and the Putative Class Members pre-judgment and post-judgment interest at the highest rates allowed by law;

u.     For an Order awarding Plaintiffs service awards as permitted by law;

v.     For an Order compelling the accounting of the books and records of Waste Management; and

w.     For an Order granting such other and further relief as may be necessary and appropriate.

Date:   August 7, 2018                     Respectfully submitted,

                                           **ANDERSON ALEXANDER, PLLC**

                              By:     /s/ *Clif Alexnder*
                                      **Clif Alexander**
                                      Federal I.D. No. 1138436
                                      Texas Bar No. 24064805
                                      clif@a2xlaw.com
                                      **Austin W. Anderson**
                                      Federal I.D. No. 777114
                                      Texas Bar No. 24045189
                                      austin@a2xlaw.com
                                      **Lauren E. Braddy**
                                      Federal I.D. No. 1122168
                                      Texas Bar No. 24071993
                                      lauren@a2xlaw.com
                                      **Alan Clifton Gordon**
                                      Federal I.D. No. 19259
                                      Texas Bar No. 00793838
                                      cgordon@a2xlaw.com
                                      **Carter T. Hastings**
                                      Federal I.D. No. 3101064
                                      Texas Bar No. 24101879
                                      carter@a2xlaw.com

**George Schimmel**
Federal I.D. No. 2338068
Texas Bar No. 24033039
geordie@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*Attorneys for Plaintiffs and the Putative Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2018, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Clif Alexander
Clif Alexander